# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
## SOUTHERN DIVISION

### No. 7:09-CV-00085-D

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | **ORDER AND MEMORANDUM AND RECOMMENDATION** |
| NEW HANOVER REGIONAL MEDICAL CENTER, | ) ) ) | |
| Defendant. | ) ) | |

This matter is before the Court on (1) Plaintiff's Motions to Compel [DE-28 & 39]; (2) Defendant's Motion to Dismiss [DE-37]; (3) Defendant's Motion for Summary Judgment [DE-49]; (4) Defendant's Motions to Seal [DE-57 & 85]; (5) Plaintiff's Motions to Seal [DE-73 & 77]; and (6) Plaintiff's Motion to Strike [DE-74]. All appropriate responses and replies have been filed. Accordingly, these nine motions are presently ripe for review and Chief Judge Dever has referred the motion to dismiss and the motion for summary judgment to the undersigned for memorandum and recommendation and the motions to compel, the motions to seal, and the motion to strike to the undersigned for disposition.

## STATEMENT OF THE CASE

Between 2005 and 2007, Elizabeth Saunders ("Saunders"), Mary Eubanks ("Eubanks"), and Allison Burge ("Burge") (collectively "the charging parties") filed three individual Charges of Discrimination ("CODs") with the Equal Employment Opportunity Commission ("the EEOC"), alleging that they had been discriminated against by New Hanover Regional Medical

Center ("New Hanover") because of perceived disabilities associated with their use of legally prescribed narcotic medication(s). In September of 2007, the EEOC issued individual Letters of Determination ("LODs") as to the charging parties. Attempts at conciliation were unsuccessful, and on May 22, 2009, the EEOC filed the Complaint [DE-1] in the instant action against New Hanover.

In its Complaint, the EEOC alleged violations of Title I of the Americans with Disabilities Act of 1990 ("the ADA") on behalf of the charging parties, as well as "similarly situated applicants and employees," who were allegedly adversely affected by New Hanover's employment practices. To that end, the EEOC contends that New Hanover unlawfully denied hire or placed on unpaid leave applicants and employees, including the charging parties, who were taking legally prescribed narcotic medication(s). On July 20, 2009, Defendant filed its first Motion to Dismiss [DE-2], pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), which was denied by Order [DE-8] of Chief Judge Dever on December 23, 2009. Thereafter, Defendant filed an Answer [DE-9] on January 6, 2010 and the parties commenced discovery.

Over a year later, on April 14, 2011, Plaintiff filed its first Motion to Compel [DE-28], to which Defendant responded [DE-33]. On May 20, 2011, the undersigned entered an Order [DE-36] holding the motion to compel in abeyance in order to allow Defendant time to file a related and apparently forthcoming second motion to dismiss. On June 3, 2011, Defendant filed the expected second Motion to Dismiss [DE-37], pursuant to Rule 12(b)(6), with regard to what it describes as Plaintiff's "class claims," to which Plaintiff responded [DE-42] and Defendant replied [DE-45]. On June 15, 2011, Plaintiff filed a second Motion to Compel [DE-39], to which

Defendant also responded [DE-44]. Subsequently, Defendant filed a Supplemental Response in Opposition [DE-66] to the second motion to compel, to which Plaintiff replied [DE-67].[1]

On July 15, 2011, Defendant filed a Motion for Summary Judgment [DE-49], to which Plaintiff responded [DE-71] and Defendant replied [DE-83]. In relation to documents associated with the motion for summary judgment, Defendant filed its first Motion to Seal [DE-57] on July 16, 2011 and its second Motion to Seal [DE-85] on September 1, 2011. On August 15, 2011, Plaintiff filed a Motion to Strike [DE-74], which sought to strike portions of an affidavit filed by Defendant in support of its motion for summary judgment, to which Defendant responded [DE-86] and Plaintiff replied [DE-87]. Thereafter, Plaintiff also filed two Motions to Seal [DE-73 & 77], on August 15, 2011 and August 16, 2011, respectively, in relation to additional documents associated with Defendant's motion for summary judgment.

## DISCUSSION

### 1. Defendant's motion to dismiss [DE-37]

Pursuant to Rule 12(b)(1), a claim may be dismissed for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The existence of subject matter jurisdiction is a threshold question that a court must address before considering the merits of the case. *Jones v. Am. Postal Workers Union*, 192 F.3d 417, 422 (4th Cir. 1999). When confronted with a Rule 12(b)(1) motion to dismiss, the plaintiff, as the party opposing the motion, has the burden of proving that subject matter jurisdiction does in fact exist. *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

Here, Defendant's motion to dismiss requests that the Court dismiss Plaintiff's "class claims"—namely, those claims asserted by Plaintiff on behalf of any persons, known or

---

[1] The Court notes that no leave was given by the Court for either Defendant's filing of a supplemental response or Plaintiff's filing of a reply to that response. However, the Court also notes that it appears from Plaintiff's reply that the issues raised in Defendant's supplemental response have been resolved and, therefore, the issue is moot.

unknown, *other than* the charging parties—because the Court lacks subject matter jurisdiction over any such claims.[2] Defendant argues that the Court lacks jurisdiction because Plaintiff has failed to fulfill the ADA's procedural requirements with regard to any claims other than those of the charging parties.[3] In support of its position, Defendant notes that none of the CODs filed by the charging parties with the EEOC between 2005 and 2007 contained class claims, that the EEOC's investigation of those CODs focused on the charging parties, that the LODs ultimately issued by the EEOC as to the charging parties in September of 2007 did not reference any other specific class members, and that no class relief was mentioned during the failed attempts at conciliation of the charging parties' claims. Therefore, Defendant argues that reasonable notice of the class claims was not given and that, as a result, Plaintiff has failed to establish subject matter jurisdiction over any such claims.

In response, Plaintiff argues that it has in fact fulfilled the ADA's procedural requirements with regard to its class claims. To that end, Plaintiff contends that the EEOC's claims in this type of action are generally not limited to the claims presented by the charging parties, that Defendant was adequately notified that the EEOC was expanding its investigation to class claims, that the LODs indicated that there was a class of similarly situated applicants and employees, and that the EEOC engaged in good faith attempts at conciliation. Plaintiff also notes that Defendant has conceded that the EEOC notified it during investigation, in the LODs,

---

[2] In its first motion to dismiss [DE-2], Defendant argued that the Court lacked subject matter jurisdiction over the charging parties' claims *only*. That motion was denied [DE-8] by Chief Judge Dever.

[3] At the outset, the Court notes that the parties disagree as to how the procedural requirements at issue should be characterized. On the one hand, Defendant argues that they are jurisdictional requirements which, if not established for the class claims, would deprive the Court of subject matter jurisdiction over those claims. On the other hand, Plaintiff argues that they are merely preconditions to suit which operate as duties to be performed prior to filing, and which would be more appropriately addressed in a motion for summary judgment. Therefore, Plaintiff insists that the instant motion to dismiss is an inappropriate vehicle for dismissal of the class claims. However, because the undersigned recommends, as discussed below, that Defendant's motion to dismiss be denied, the Court need not consider the question further at this time and, accordingly, declines to do so.

4

and in the complaint that there were class claims and contends that the interests of justice weigh in favor of denying Defendant's motion to dismiss.

Suits filed by the EEOC regarding claims under Title I of the ADA incorporate the same procedural requirements as those that are set forth in Section 706 of Title VII of the Civil Rights Act of 1964. *See* 42 U.S.C. § 12117. Accordingly, before the EEOC may appropriately bring an action asserting so-called Section 706 disability discrimination claims under the ADA, "there must be a charge filed with the EEOC, notice of the charge to the employer, investigation by the EEOC, a determination of reasonable cause, and an effort at conciliation." *E.E.O.C. v. Am. Nat'l Bank*, 652 F.2d 1176, 1185 (4th Cir. 1981); *see also* 42 U.S.C. § 2000e-5(b). The same requirements apply with regard to the maintenance of so-called Section 707 "pattern or practice" discrimination claims under the ADA. *See* 42 U.S.C. § 2000e-6(e). Here, the EEOC has alleged both Section 706 disability discrimination claims and Section 707 "pattern or practice" claims on behalf of the charging parties and a class of "similarly situated applicants and employees."

This Court recently considered a similar question to the one presented in Defendant's motion to dismiss. In that case, *E.E.O.C. v. Luihn Food Sys., Inc.*, Chief Judge Dever outlined the applicable standard for the allowable scope of the EEOC's claims as follows:

> Although an employee must file a charge for the EEOC to investigate, the EEOC's complaint in the section 706 action that results from the EEOC's investigation is not limited to the conduct stated in the charge. Instead, the EEOC may file a section 706 action concerning "new discrimination" not stated in a charge, so long as such discrimination "arises out of the reasonable investigation of the charge filed."

5:09-CV-387-D, 2011 WL 4747896, at *3 (E.D.N.C. Sept. 20, 2011) (Dever, C.J.) (citations omitted). Though recognizing that the Fourth Circuit had held in *E.E.O.C. v. Gen. Elec. Co.*, 532 F.2d 359 (4th Cir. 1976), that the EEOC must make a cause determination and attempt conciliation regarding all claims, Chief Judge Dever noted that, "[d]espite this apparent cause-

and-conciliation requirement," the Fourth Circuit had subsequently held in *Am. Nat'l Bank*, 652 F.2d 1176, that "the failure to identify all class members as part of a cause determination or the failure to conciliate every class member's claim does not divest the district court's jurisdiction." *Luihn*, 2011 WL 4747896, at *3. Chief Judge Dever went on to describe the holding in *Am. Nat'l Bank* as follows:

> [T]he EEOC issued a cause determination in support of a charge that the employer-bank engaged in a pattern or practice of racially discriminatory hiring at its branch in Suffolk, Virginia. The EEOC's cause determination specifically limited its scope to hiring practices at the Suffolk branch, and included a footnote stating that information regarding hiring at another branch in Portsmouth, Virginia was "irrelevant." The EEOC attempted conciliation, but was unsuccessful. The EEOC then brought suit under section 706, alleging a pattern or practice of discrimination at the defendant's Suffolk and Portsmouth branches. . . . The Fourth Circuit held that the EEOC's investigation and attempted conciliation of the race-discrimination claims regarding hiring at the Suffolk branch had been adequate to put the bank on notice of the "practices under investigation and [provided] ample opportunity for conciliation concerning those practices," thereby satisfying the statutory requirements. In reaching this conclusion, the Fourth Circuit found it significant that the claims pertaining to the Portsmouth and Suffolk branches were against the same defendant, which had common ownership and control over both branches, and that all charges were based on the same alleged discriminatory hiring practice. These factors all indicated that "[t]here was ... no possibility for prejudicial surprise of the sort that has properly been held to preclude proof of later added charges in other situations."
>
> . . . .
>
> As for conciliation, the Fourth Circuit held in *American National Bank* that Title VII did not require conciliation of the Portsmouth branch claims.

*Id.* at *3, 5 (citations omitted); *see also Am. Nat'l Bank*, 652 F.2d 1176.

In *Luihn*, Chief Judge Dever found that this Court had subject matter jurisdiction over the claims of a class member who was not specifically named in the COD or LOD and whose claims had not been specifically conciliated where the complaint referenced the charging parties and "other similarly situated female employees." In so finding, he noted evidence which indicated

that the EEOC had "maintained throughout conciliation that its claims related to the four charging parties and a class of similarly situated female employees," that the class member's "allegations [we]re based upon the same actions of the same defendant at the same store, during the same relevant time period as the claims of the four charging parties, and involve[d] the same co-worker," as well as the fact that "it appear[ed] unlikely that including [the class member]'s claim in conciliation would have altered the outcome of that process, given the similarity between her claim and the claims that the parties were unable to settle." *Luihn*, 2011 WL 4747896, at *5.

Here, the Court sees no significant factual difference which would require a different result than that reached in *Luihn*. Neither party disputes the fact that three appropriate CODs were filed and New Hanover was timely noticed. The EEOC investigated those three charges and informed New Hanover in writing on March 22, 2007 that it was expanding the investigation to examine the effect of New Hanover's drug and alcohol policy on current and former employees and applicants generally. *See* Def.'s Mem. in Supp. Ex. J at 2 [DE-37-11]. As a result, the EEOC reviewed the medical records of over 1,000 potential class members at New Hanover's facility during the investigation stage. In addition, the LODs that were ultimately issued following the investigation referenced a "class of applicants and employees." Though the EEOC did not specifically name any additional class members until discovery was underway in the instant lawsuit, the law of the Fourth Circuit clearly indicates that they were not required to do so, contrary to Defendant's suggestion. Accordingly, the Court finds that the requirements of a charge filed with the EEOC, notice of the charge to the employer, investigation by the EEOC, and a determination of reasonable cause have all been met under the prevailing standard articulated by *Am. Nat'l Bank*. In so finding, the Court finds persuasive the fact that, in *Luihn*,

7

Chief Judge Dever acknowledged that certain other district and circuit courts have adopted more narrow interpretations of subject matter jurisdiction than that articulated by the Fourth Circuit in *Am. Nat'l Bank*, but found those cases to be factually distinguishable as well as contrary to established and binding precedent. 2011 WL 4747896, at *4-5. These cases are, predictably, heavily relied upon by Defendant here, and the undersigned has reviewed them and come to the same conclusion with regard to the instant motion to dismiss.[4]

The parties also disagree as to whether the final *Am. Nat'l Bank* requirement, an effort at conciliation, was sufficiently undertaken. As the Western District of North Carolina recently explained:

> The conciliation requirement does not demand an exacting standard, and "[t]he law requires ... no more than a good faith attempt at conciliation."
>
> . . . .
>
> "Courts find that reasonableness or flexibility of the EEOC lacking where it refuses to communicate or negotiate with the defendant." Importantly, however, there is no requirement that the EEOC continue to negotiate once the futility of conciliation has become apparent, nor is there a requirement that the EEOC prove its case during the conciliation period. Furthermore, the mere fact that "the [Defendant] was dissatisfied with the EEOC's explanation of its determination is not a reason to find that the EEOC acted unreasonably." In short, there is no requirement that the EEOC meet Defendant in the middle, nor is there a

---

[4] For example, in *E.E.O.C. v. CRST Van Expedited, Inc.*, the court expressed concern that the defendant could not have been expected to know if a broadly referenced class consisted of "two, twenty or two thousand" members, and found that "the case at bar [wa]s one of those exceptionally rare § 706 cases in which the record shows that the EEOC did not conduct *any* investigation of the specific allegations of the allegedly aggrieved persons for whom it seeks relief at trial before filing the Complaint." 2009 WL 2524402, at *8, 16 (N.D. Iowa Aug. 13, 2009). That is not the case here. New Hanover is a regional medical center and not a nationwide company so expansive that it could have been *wholly* unaware of the number of potential class members. Furthermore, Defendant concedes that the EEOC requested medical records for individuals other than the charging parties and, therefore, it cannot convincingly argue that the EEOC performed *no* investigation as to its class claims. In addition, the Court agrees with the EEOC's contention that *CRST* is distinguishable based on the fact that it did not contain a Section 707 "pattern or practice" claim.

Similarly, in *E.E.O.C. v. Cintas Corp.*, in which the EEOC had become involved only as an intervenor after initially declining to issue a right to sue letter, the court found significant the fact that the EEOC freely admitted that it had pursued *no* investigation or conciliation whatsoever on behalf of the purported class members, and that, once again, there were no Section 707 "pattern or practice" claims involved. 2010 WL 3733978, at *7-10 (E.D. Mich. Sept. 20, 2010). Here, once again, the Court notes that Defendant has conceded that the EEOC pursued at least some investigation and that there are Section 707 "pattern or practice" claims in play.

8

requirement that Defendant be satisfied with the sufficiency of the evidence or with the depth of the EEOC's investigation, and "courts do not second-guess the EEOC's conciliation efforts so long as the EEOC acts in a reasonable and flexible manner as it negotiates with the defendant."

*E.E.O.C. v. McGee Bros. Co., Inc.*, 2011 WL 1542148, at \*4 (W.D.N.C. Apr. 21, 2011) (citations omitted).

Here, the EEOC has represented to the Court that the following chain of events occurred regarding conciliation: The EEOC first invited New Hanover to participate in conciliation when the LODs were issued in September of 2007. A conciliation conference was scheduled for November 9, 2007, which New Hanover then postponed. In December of 2007, the EEOC attempted to reschedule, but New Hanover did not respond. In January of 2008, the EEOC proposed a second conference date of January 28, 2008. In response, New Hanover requested that the EEOC reconsider its reasonable cause findings, a request which the EEOC declined, and Defendant informed the EEOC that it was not available on the proposed date. The EEOC proposed a third conference date of March 7, 2008. Once again, New Hanover requested that the EEOC reconsider its reasonable cause determination and, additionally, indicated that it felt conciliation was unlikely to resolve matters. In response, the EEOC proposed a fourth conference date of March 19, 2008, to which New Hanover again responded by requesting reconsideration of the reasonable cause findings, as well as the amounts of relief demanded. Thereafter, the EEOC issued a notice of conciliation failure on April 3, 2008. *See* Pl.'s Resp. in Opp'n at 3-4 [DE-42].

Though Defendant argues that the burden is on the EEOC to make a good faith effort at conciliation and that the EEOC's attempts to schedule conciliation conferences were not sufficient, the Court disagrees. There is no indication that the EEOC acted unreasonably, and Defendant's apparent contention that it would have been willing to attend a conference if the

EEOC had first explained the basis for what Defendant describes as a "material error" in the reasonable cause findings does not change the fact that it was New Hanover, and not the EEOC, that refused to facilitate conciliation by attending a conference. The EEOC attempted at least four times to engage New Hanover and was met each time by the same resistance and a demand for information that the EEOC was not necessarily required to produce prior to a conference. As a result, the Court cannot say that the EEOC did not engage in a good faith attempt at conciliation. In addition, as previously discussed, Defendant's argument that the EEOC's attempts at conciliation were insufficient because they did not specifically identify any class members in addition to the charging parties or discuss class relief is also contrary to established Fourth Circuit precedent. *See Am. Nat'l Bank*, 652 F.2d at 1185-86. Finally, the Court notes that it is inclined to agree with Plaintiff's position that the interests of justice favor allowing the EEOC to proceed with its class claims because, though Defendant now asserts that it has always objected to Plaintiff's class claims, its first motion to dismiss, filed in 2009, was with regard only to the charging parties and Defendant has offered no explanation for this fact.

In sum, the Court finds that the EEOC did not err in failing to include class claims in the CODs, that the EEOC appropriately broadened its investigation to include class claims, that the LODs did not need to specifically name additional class members, and that the attempts at conciliation were sufficient. Therefore, the procedural requirements that "there must be a charge filed with the EEOC, notice of the charge to the employer, investigation by the EEOC, a determination of reasonable cause, and an effort at conciliation," as articulated in *Am. Nat'l Bank*, have been fulfilled.

Accordingly, for the foregoing reasons, Plaintiff has met its burden to prove the existence of subject matter jurisdiction, and it is **RECOMMENDED** that Defendant's motion to dismiss be **DENIED**.

### 2. Plaintiff's motions to compel

#### a. Plaintiff's first motion to compel [DE-28]

On January 21, 2011, Plaintiff served Defendant with its Third Request for Production of Documents. Request for Production No. 5 therein requested that New Hanover:

> Produce an electronic database from Defendant's Lawson personnel system showing all employees of New Hanover Regional Medical Center from January 1, 2004 to the present. The database should include each employee's full name, last known address and telephone number, social security number, date of hire, position at the time of hire, date of termination if applicable, and position at the time of termination, if applicable.

Pl.'s First Mot. to Compel Ex. A at 6-7 [DE-28-1]. Though Defendant complied with Request for Production No. 5 in large part, it objected to providing the social security numbers of the employees in question based on its belief that such information was highly confidential information regarding non-parties and was unnecessary for Plaintiff's class search. Pl.'s First Mot. to Compel Ex. B at 10-11 [DE-28-2].

On April 14, 2011, Plaintiff filed its first motion to compel. In this motion to compel, Plaintiff argued that mechanisms were in place, including a protective order, which would preserve the privacy and confidentiality of the requested information and that the EEOC required the information in order to complete its class search in this action. In response, Defendant argued that Plaintiff was impermissibly seeking discovery in order to contact individuals to pursue class claims that were not alleged in the complaint and asserted that it would be filing a motion to dismiss the class claims for lack of subject matter jurisdiction. As a result, because it appeared that a favorable ruling on the then-forthcoming motion to dismiss might have rendered

11

the motion to compel moot, the undersigned entered an order holding the motion to compel in abeyance pending resolution of the motion to dismiss. Now, in light of its recommendation that the motion to dismiss be denied, the Court once again turns its attention to the propriety of Plaintiff's discovery request.

The undersigned has recommended that Plaintiff be allowed to proceed with its class claims in the instant action. *See supra* Section 1. Accordingly, at least to some extent, class discovery is proper. Defendant has already complied with Request for Production No. 5 in large part, initially withholding only the social security numbers of its former employees due to its belief that the social security numbers were confidential. As to that objection, the Court agrees with Plaintiff that the protective order in place in this case would adequately protect the privacy of the individuals concerned. As to Defendant's more recent objection that Plaintiff is not entitled to the information because it cannot maintain its class claims, the undersigned's recommendation that the motion to dismiss the class claims be denied renders that argument inapposite. Therefore, because Defendant has not otherwise objected to the scope or subject matter of Request for Production No. 5, the Court finds that Defendant is unable to maintain a valid objection to producing the social security numbers.

Accordingly, it is **ORDERED** that, should the undersigned's recommendation as to Defendant's motion to dismiss ultimately be adopted as this Court's order, Plaintiff's first motion to compel be **GRANTED**.

### b. Plaintiff's second motion to compel [DE-39]

On March 24, 2011, Plaintiff served Defendant with its Fourth Set of Requests for Production of Documents. Requests for Production Nos. 1, 2, 15, 19, and 20 therein, respectively, requested the following:

12

> [A]n electronic database from Defendant's STIX employee health software program showing all individuals sent to Defendant's Employee Health Department for a post-offer employee health assessment since January 1, 2004. For each employee identified, the database should contain the individual's full name, social security number, job which the employee has been offered, department, start date, and employee number, if applicable.
>
> Copies of all job descriptions for all positions at New Hanover Regional Medical Center from January 1, 2004 to the present.
>
> Payroll documents showing the pay for the position held by Gloria McLean at the time that she stopped working for Defendant.
>
> All personnel files for any applicant, former or current employee who has been identified by the EEOC as a class member in this lawsuit.
>
> All employee health files for any applicant, former or current employee who has been identified by the EEOC as a class member in this lawsuit.

Pl.'s Second Mot. to Compel Ex. A at 5, 10, 12 [DE-39-1]. Defendant objected to Requests for Production Nos. 1, 2, 15, 19, and 20 on the grounds that it had previously produced the requested information for the charging parties and, insofar as the discovery requests sought information relating to any other purported class members, they were not relevant and jurisdictionally barred. Pl.'s Second Mot. to Compel Ex. B at 7-8, 20, 22-23 [DE-39-2].

On June 15, 2011, Plaintiff filed its second motion to compel. In this motion to compel, Plaintiff argued that the discovery requests in question were relevant, not overbroad, and not unduly burdensome. In addition, Plaintiff reiterated its position that its class claims were not jurisdictionally barred and that, therefore, it was entitled to discovery regarding those claims. In response, Defendant simply requested that, in light of the Court's order holding the first motion to compel in abeyance, that the Court do the same for the second motion to compel for the same reasons.

Once again, as to Defendant's objection that Plaintiff is not entitled to the information because it cannot maintain its class claims, the undersigned's recommendation that the motion to

13

dismiss the class claims be denied renders that argument inapposite. Therefore, because Defendant has not otherwise objected to the scope or subject matter of Requests for Production Nos. 1, 2, 15, 19, and 20, the Court finds that Defendant is unable to maintain a valid objection to producing the requested documents. In addition, the Court notes that it has independently considered the propriety of Requests for Production Nos. 1, 2, 15, 19, and 20 and finds that these requests are reasonably calculated to lead to relevant information regarding the claims and defenses at issue in this action.

Accordingly, it is **ORDERED** that, should the undersigned's recommendation as to Defendant's motion to dismiss ultimately be adopted as this Court's order, Plaintiff's second motion to compel be **GRANTED**.

In addition, because the discovery period in this case closed on June 15, 2011, Plaintiff requested in its second motion to compel that, should Defendant's motion to dismiss be denied, the parties be allowed additional time to complete discovery regarding the class claims. The Court agrees that this would be proper. Accordingly, should the undersigned's recommendation as to Defendant's motion to dismiss ultimately be adopted as this Court's order, **the discovery period shall be re-opened for a period of sixty (60) days** in order to allow the parties time to conduct such class discovery as they see fit, dating from such date as the undersigned's recommendation as to the motion to dismiss is adopted. During that time, Defendant is **DIRECTED** to respond to the discovery requests referenced in *both* of Plaintiff's motions to compel **within thirty (30) days**, dating from such date as the undersigned's recommendation as to the motion to dismiss is adopted.

14

### 3. Defendant's motion for summary judgment [DE-49]

Summary judgment is appropriate pursuant to Rule 56 when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). Once the moving party has met its burden, the non-moving party may not rest on the allegations or denials in its pleading, *Anderson*, 477 U.S. at 248, but "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). As this Court has stated, summary judgment is not a vehicle for the court to resolve disputed factual issues. *Faircloth v. United States*, 837 F. Supp. 123, 125 (E.D.N.C. 1993). Instead, a trial court reviewing a claim at the summary judgment stage should determine whether a genuine issue exists for trial. *Anderson*, 477 U.S. at 249. In making this determination, the court must view the inferences drawn from the underlying facts in the light most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curium). Only disputes between the parties over facts that might affect the outcome of the case properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 247-48.

Here, Defendant presents three separate arguments in its motion for summary judgment. First, Defendant argues that the charging parties, as well as any other potential class members, cannot maintain Section 706 "regarded as" disability discrimination claims because there is no genuine issue of material fact and it, as the moving party, is entitled to judgment as a matter of law. Second, Defendant argues the same regarding Plaintiff's Section 707 "pattern or practice" claims. Finally, Defendant argues that Plaintiff's entire action is barred by laches.

In the instant order and memorandum and recommendation, the undersigned has recommended that Plaintiff be allowed to proceed as to its class claims and that Defendant's motion to dismiss any such claims be denied. In addition, the undersigned has ordered that, should this recommendation ultimately be adopted as this Court's order, the discovery period shall be re-opened for a period of sixty (60) days in order to allow the parties time to conduct such class discovery as they see fit. Plaintiff has asserted both its Section 706 "regarded as" disability discrimination claims and its Section 707 "pattern or practice" claims on behalf of both the charging parties and the potential class members. Therefore, the Court finds that granting summary judgment as to any of Plaintiff's claims would be premature at this juncture.

Accordingly, it is **RECOMMENDED** that, should the undersigned's recommendation as to Defendant's motion to dismiss ultimately be adopted as this Court's order, Defendant's motion for summary judgment be **DENIED WITHOUT PREJUDICE with leave to re-file thirty (30) days after the close of the class discovery period**.

### 4. The parties' motions to seal [DE-57, 73, 77, & 85]

Defendant's first and second motions to seal [DE-57 & 85] requested that the following eight documents be placed under seal pursuant to the Joint Consent Protective Order [DE-26] entered in this matter on January 5, 2011:

1. Second Affidavit of Jerry Burleson, Ex. 3 to Defendant's Motion for Summary Judgment [DE-51];

2. Select portions of Elizabeth Saunders' Deposition and Exhibits, Ex. 4 to Defendant's Motion for Summary Judgment [DE-62];[5]

3. Select portions of Mary Eubanks' Deposition and Exhibits, Ex. 5 to Defendant's Motion for Summary Judgment [DE-63];[6]

---

[5] Corrected copy of a document originally filed at DE-52.
[6] Corrected copy of a document originally filed at DE-53.

4.  Select portions of Allison Burge's Deposition and Exhibits, Ex. 6 to Defendant's Motion for Summary Judgment [DE-64];[7]

5.  Select portions of Howard Armistead, M.D.'s Deposition and Exhibits, Ex. 7 to Defendant's Motion for Summary Judgment [DE-65];[8]

6.  Select portions of Susan Starling's Deposition, Ex. 8 to Defendant's Motion for Summary Judgment [DE-56];

7.  Defendant's Memorandum in Support of its Motion for Summary Judgment [DE-61];[9] and

8.  Defendant's Reply in Support of its Motion for Summary Judgment [DE-83].

Plaintiff's first and second motions to seal [DE-73 & 77] requested that the following twenty-five documents be placed under seal pursuant to the protective order:

1.  Selected portions of Elizabeth Saunders' Deposition, Ex. 1 to Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment [DE-71-1];

2.  Elizabeth Saunders' Declaration, Ex. 2 to Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment [DE-71-2];

3.  Selected portions of Mary Eubanks' Deposition, Ex. 3 to Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment [DE-71-3];

4.  Mary Eubanks' Declaration, Ex. 4 to Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment [DE-71-4];[10]

5.  Selected portions of Allison Burge's Deposition, Ex. 5 to Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment [DE-71-5];

6.  Selected portions of Dr. Howard Armistead's Deposition, Ex. 7 to Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment [DE-71-6];

---

[7] Corrected copy of a document originally filed at DE-54.
[8] Corrected copy of a document originally filed at DE-55.
[9] Corrected copy of a document originally filed at DE-50.
[10] This document appears to have been a subject of both of Plaintiff's motions to seal.

7. Selected portions of Daniel Shapiro's Deposition, Ex. 9 to Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment [DE-71-7];

8. Selected portions of Jerry Burleson's Deposition, Ex. 11 to Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment [DE-71-8];

9. Selected portions of Troy Bond's Deposition, Ex. 14 to Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment [DE-71-9];

10. Selected portions of Susan Starling's Deposition, Ex. 16 to Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment [DE-71-10];

11. Selected portions of Susan Hammond's Deposition, Ex. 18 to Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment [DE-71-11];

12. Selected portions of Eric Boehling's Deposition, Ex. 19 to Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment [DE-71-12];

13. Zhanna Meggison's Declaration, Ex. 23 to Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment [DE-71-13];

14. Elizabeth Saunders' Employee Health History Questionnaire, Ex. 29 to Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment [DE-71-14];

15. Dr. Phillips' September 9, 2004 note related to Elizabeth Saunders, Ex. 30 to Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment [DE-71-15];

16. Dr. Phillips' September 17, 2004 note related to Elizabeth Saunders, Ex. 32 to Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment [DE-71-16];

17. Dr. Phillips' October 25, 2004 note related to Elizabeth Saunders, Ex. 33 to Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment [DE-71-17];

18. Mary Eubanks' Employee Health History Questionnaire, Ex. 34 to Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment [DE-71-18];

19. Dr. Weinstein's September 28, 2005 note related to Mary Eubanks, Ex. 35 to Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment [DE-71-19];

20. Mary Eubanks' 2005 Employee Health Record, Ex. 36 to Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment [DE-71-20];

21. Allison Burge's 2005 Annual Health Screening, Ex. 37 to Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment [DE-71-21];

22. Allison Burge's 2006 Annual Health Screening, Ex. 38 to Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment [DE-71-22];

23. Dr. Jackson's November 1, 2006 note related to Allison Burge, Ex. 39 to Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment [DE-71-23];

24. Eubanks' 2003 FMLA Certification, Ex. 40 to Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment [DE-71-24]; and

25. Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment [DE-71].

Before granting a motion to seal, courts must first give the public notice and a reasonable opportunity to challenge the motion and then examine the public's right to access in conformity with *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 178, 181 (4th Cir. 1988). If a court finds that the public's right to access is outweighed by another significant interest, then the court must consider whether there are less drastic alternatives to sealing. *Id.* In furtherance of this directive from the Fourth Circuit, this Court has promulgated Local Rules and procedures related to the filing of sealed material. *See* Local Civil Rule 79.2 and Elec. Case Filing Admin. Policies and Procedures Manual, § T(1)(a)1-7 (Rev. Jan. 25, 2010). Pursuant to these rules and procedures, the parties must specify the following:

(i) the exact document or item, or portions thereof, for which filing under seal is requested;

(ii) how such request to seal overcomes the common law or the First Amendment presumption to access;

(iii) the specific qualities of the material at issue which justify sealing such material, taking into account the balance of competing interest in access;

(iv) the reasons why alternatives to sealing are inadequate; and

(v) whether there is consent to the motion.

Elec. Case Filing Admin. Policies and Procedures Manual, § T(1)(a)1.

Here, the parties have filed these four motions to seal with regard to documents filed with the Court which contain references to sensitive medical information, pursuant to Paragraph 5 of the protective order entered in this matter. *See* Prot. Order at 4 [DE-26] ("To the extent any medical records or health related information disclosed during discovery or during a deposition is filed with the court, counsel filing the confidential material shall file it under seal in accordance in accordance [sic] with the federal rules of civil procedure and any applicable local rules."). Defendant has represented to the Court that its proposed sealed documents contain or reference detailed medical information for more than 120 current and former New Hanover employees and descriptions of the charging parties' medical conditions. Therefore, Defendant contends that the right to privacy of the confidential and personal information of nonparties justifies keeping these documents under seal and outweighs the presumption to access. Plaintiff makes substantially the same arguments as to why its proposed material, similar in character to Defendant's, should be sealed, and each of the parties consents to the other's motions to seal.

Based on the representations of the parties, the Court finds that all of the documents in question contain confidential and personal information of nonparties, which justifies keeping

these documents under seal. This risk of harm outweighs any public right to access and the alternatives to sealing are inadequate. Accordingly, for the reasons set forth in the parties' memoranda in support of the motions to seal, all four of the parties' motions to seal are **GRANTED** in their entirety. The following documents shall be **SEALED**: DE-51, DE-56, DE-61 through DE-65, DE-71, DE-71-1 through DE-71-24, and DE-83.

### 5. Plaintiff's motion to strike [DE-74]

Plaintiff's motion to strike requests that the Court strike paragraphs 23-152 of the Second Affidavit of Jerry Burleson [DE-51], which Defendant relies upon in support of its motion for summary judgment, because Defendant failed to previously disclose the evidence contained in the affidavit. In response, Defendant argues that this is not the case and that, in fact, Defendant's discovery responses identified the information contained in the affidavit to which Plaintiff objects and that it has previously offered to provide Plaintiff with access to such information.

Rule 37 states that "[i]f a party fails to provide information or identify a witness . . . , the party is not allowed to use that information or witness to supply evidence . . . unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The paragraphs in question are summaries of the medical and personnel records of 129 individuals who Dr. Burleson asserts are working or have worked for New Hanover while taking narcotic medication(s) and the parties appear to agree that the evidence would tend to support Defendant's defense to Plaintiff's Section 707 "pattern or practice" claims. Therefore, the Court notes that, if the information and records referenced in Dr. Burleson's affidavit were in fact withheld by Defendant, it would likely not have been a harmless omission. However, because the undersigned recommends that Defendant's motion for summary judgment be denied without prejudice, with leave to re-file after class discovery has closed, the Court need not consider the propriety of either party's

actions and there is no reason to strike the paragraphs in question at this time. Plaintiff will be free to request the allegedly withheld information during such class discovery and will no longer be potentially prejudiced by its inclusion in Defendant's motion for summary judgment. Accordingly, it is **ORDERED** that, should the undersigned's recommendations as to Defendant's motion to dismiss and motion for summary judgment ultimately be adopted as this Court's order, Plaintiff's motion to strike be **DENIED AS MOOT**.

## CONCLUSION

In sum, for all of the foregoing reasons, the parties' nine outstanding motions are resolved as follows:

1. It is **RECOMMENDED** that Defendant's Motion to Dismiss [DE-37] be **DENIED**.

2. It is **ORDERED** that, should the undersigned's recommendation as to Defendant's motion to dismiss ultimately be adopted as this Court's order, Plaintiff's Motions to Compel [DE-28 & 39] be **GRANTED**. In addition, at that time, **the discovery period shall be re-opened for a period of sixty (60) days**, dating from such date as the undersigned's recommendation as to the motion to dismiss is adopted, in order to allow the parties time to conduct such class discovery as they see fit. During that time, Defendant is **DIRECTED** to respond to all of the discovery requests referenced in *both* of Plaintiff's motions to compel **within thirty (30) days**, dating from such date as the undersigned's recommendation as to the motion to dismiss is adopted.

3. It is **RECOMMENDED** that Defendant's Motion for Summary Judgment [DE-49] be **DENIED WITHOUT PREJUDICE with leave to re-file thirty (30) days after the close of the class discovery period**.

4. It is **ORDERED** that, should the undersigned's recommendations as to Defendant's motion to dismiss and motion for summary judgment ultimately be adopted as this Court's order, Plaintiff's Motion to Strike [DE-74] be **DENIED AS MOOT**.

5. It is **ORDERED** that Defendant's Motions to Seal [DE-57 & 85] and Plaintiff's Motions to Seal [DE-73 & 77] be **GRANTED** in their entirety. Accordingly, the following documents shall be designated as **SEALED**: DE-51, DE-56, DE-61 through DE-65, DE-71, DE-71-1 through DE-71-24, and DE-83.

The Clerk shall send copies of this Order and Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days from the date of receipt to file written objections to those portions addressed by recommendation. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

This the 23rd day of February, 2012.

David W. Daniel
DAVID W. DANIEL
United States Magistrate Judge