## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
## CIVIL ACTION NO. 7:09-CV-00085

EQUAL EMPLOYMENT )
OPPORTUNITY COMMISSION, )
     )
        Plaintiff, )
     )     **CONSENT DECREE**
        v. )
     )
     )
NEW HANOVER REGIONAL )
MEDICAL CENTER, )
     )
        Defendant. )
     )

      The Equal Employment Opportunity Commission (the "Commission") instituted this action pursuant to Section 107(a) of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12117(a), which incorporates by reference Section 706(f)(1), (3) and 707 of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000e-5(f)(1), (3) and 6 ("Title VII") and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

      The Defendant, New Hanover Regional Medical Center, has denied any past or current violation of the ADA or its implementing regulations. The Defendant further denies that any monetary payments hereafter made in compliance with this Consent Decree suggests or implies that it has violated any provision of the ADA. Likewise, the Commission does not disavow the allegations contained in its Complaint. The Commission's entry into this Consent Decree does not in any way imply or suggest that Defendant was in compliance with the law as alleged in this action.

The Commission and the Defendant, New Hanover Regional Medical Center (the "Defendant"), hereby stipulate to jurisdiction of the Court over the parties and agree that the subject matter of this action is properly before the Court.

The parties have advised this Court that they desire to resolve the allegations in the Complaint without the burden, expense, and delay of further litigation.

It is therefore the finding of this Court, made on the pleadings and the record as a whole, that: (1) the Court has jurisdiction over the parties and the subject matter of this action; (2) the purpose and provisions of the ADA will be promoted and effectuated by the entry of the Consent Decree; and (3) this Decree resolves all matters in controversy between the parties as provided in paragraphs 1 through 17 below.

It is therefore ORDERED, ADJUDGED AND DECREED as follows:

1.      Defendant, its officers, agents, employees, successors, assigns and all other persons acting in concert with it shall not disqualify from employment any applicant for employment or employee based solely on the fact that the applicant is taking a legally prescribed narcotic medication.

2.      Defendant, its officers, agents, employees, successors, assigns and all other persons acting in concert with it are enjoined from engaging in any employment practice that discriminates on the basis of perceived disability solely because of an individual's appropriate use of prescription narcotic medication.

3.      Defendant shall pay the total amount of One Hundred and Forty Six Thousand Dollars ($146,000.00) (less legally required deductions including but not limited to mandatory Medicare withholding under the Medicare, Medicaid and SCHIP Extension Act of 2007) in resolution of the claims alleged in this matter. Payment shall be made to the Claimants in the

2

amounts determined by the Commission and communicated to Defendant in writing via a "payment distribution list." The "payment distribution list" shall be provided by the Commission within five (5) days after the Court approves this Consent Decree. Payment shall be made within sixty (60) days after the Court approves this Consent Decree. Defendant shall make payment by issuing separate checks payable to each individual listed at an address provided by the Commission on the payment distribution list. Within ten (10) days after each check has been sent, Defendant shall provide the Commission a copy of each check and proof of its delivery to the individuals listed on the "payment distribution list."

4.     Within ten (10) days of the entry of this decree by the Court, Defendant shall eliminate from the employment records of each individual listed in the payment distribution list any and all documents, entries, or references of any kind relating to the facts and circumstances which led to the filing of EEOC Charge Numbers 141-2005-02196, 141-2006-00044, and 433-2007-01233, including any events that occurred in connection with this lawsuit. Within fifteen (15) days of the entry of this decree by the Court, Defendant shall report compliance with this provision to the EEOC.

5.     Within ninety (90) days of the entry of this decree by the Court, Defendant shall revise the following policy which Defendant currently has in place, Post Employment Offer Medical Assessment (Exhibit A), to include the following:

(a) that Defendant's Employee Health Services Department will continue to conduct an individualized assessment of an applicant's ability to perform the essential functions of the specific job offered, with or without reasonable accommodation, and such assessment will be based on reasonable medical judgment that relies on current medical knowledge (e.g. physical examinations, past medical records and information from the individual's treating physicians

3

regarding narcotic prescription medications);

(b) that any recommendation for an applicant's medical disqualification from employment because of the appropriate use of lawful prescription narcotic medications from Defendant's Employee Health Services department will be reviewed by Defendant's Human Resource Department to ensure that the recommendation is based on factors that are job-related and consistent with business necessity; and

(c) that if Defendant's Employee Health Services Department recommends that an applicant for a "direct patient care" position is not medically qualified for the job for which he or she received a job offer due to a safety concern, that Defendant's Human Resource Department will review the recommendation to determine whether the individual meets the appropriate safety qualifications for the job.

6.     Within ninety (90) days of the entry of this decree by the Court, Defendant shall revise the following policy which Defendant currently has in place, Medical Examination (Exhibit B), to include the following:  All medical examinations conducted by Defendant's Employee Health Services Department will be conducted on a case-by-case basis and include an individualized assessment of an employee's ability to perform his or her specific job with or without reasonable accommodation, and such assessment will be based on reasonable medical judgment that relies on current medical knowledge (e.g. physical examinations, past medical records and information from the individual's treating physicians regarding narcotic prescription medications).

7.     Within ninety (90) days of the entry of this decree by the Court, Defendant shall revise the following policy which Defendant currently has in place, Alcohol and Drug Abuse (Exhibit C), as follows:

4

**Prohibited Conduct**

> Employees who use, possess, sell, purchase or manufacture illegal
> drugs, or controlled substances (defined as any drug or drug-like
> substance whose sale, use, purchase, or possession is unlawful
> without a prescription) or alcohol while on the job or on the
> Medical Center's property will be subject to disciplinary action, up
> to and including discharge. The appropriate use of legally
> prescribed drugs, including legally prescribed narcotic medications,
> and non-prescription medications is not prohibited subject to the
> Legal Drugs provision of this Policy.

8.      During the term of this decree, Defendant shall (a) provide applicants who receive

a conditional job offer from Defendant a copy of its revised Post Employment Offer Medical

Assessment policy referenced in paragraph 5 above and (b) shall post on its on-line computer

intranet service a copy of the revised policies as described in paragraphs 5, 6 and 7above, where

Defendant's policies are available to employees. Within one hundred (100) days after the

Consent Decree is entered, Defendant shall post the policies and notify EEOC that they have

been posted on Defendant's on-line computer intranet service.

9.      During the term of this Decree, Defendant shall provide an annual training

program to all of its managers and supervisors at its facilities. Each training program shall

include an explanation of the requirements of Americans with Disabilities Act, and its

prohibition against discrimination based on any perceived disability. Each training program

shall also include an explanation of Defendant's policies referenced in paragraphs 5, 6 and

7above, and an explanation of the rights and responsibilities of employees and managers under

the policies.

The first training program shall be completed within one hundred eighty (180) days after

entry of the decree by the Court. Each subsequent training program shall be conducted at

approximately one-year intervals. At least fifteen (15) days prior to the training program,

5

Defendant shall provide the Commission with an agenda for the training program and a copy of the specific materials to be used during the training program. Within ten (10) days after completion of the training program, Defendant shall certify to the Commission the specific training which was undertaken and shall provide the Commission with a roster of all managers and supervisors in attendance.

10.     Beginning within thirty (30) days after the entry of this Decree by the Court, and continuing throughout the term of this Decree, Defendant shall conspicuously post the attached Employee Notice, marked Exhibit D, hereby made a part of this Decree, in a place where it is visible to employees at its facilities. If the Notice becomes defaced or unreadable, Defendant shall replace it by posting another copy of the Notice.

11.     During the term of this Consent Decree, Defendant shall provide the Commission with reports at six (6) month intervals, with the first being due four (4) months after approval by the Court of this Decree. The reports will include the following information:

> A.     the identities of all applicants who were determined to be medically disqualified because of the appropriate use of lawful narcotic medication prescriptions pursuant to paragraph 5(b) of this Decree, including by way of identification each person's name, address, telephone number, social security number and position offered;
>
> B.     for each individual identified in 11.A. above, explain the specific reason that the individual was medically disqualified for the position which they had been offered;
>
> C.     the identity of any employee who provides Defendant's Human Resource Department a complaint about being prohibited from using a prescription

6

narcotic medication while at work within five days of such prohibition, including name, address, telephone number, social security number, and position currently or last held. In this report, Defendant shall include the specific reason that the employee was prohibited from using a prescription narcotic medication; the number of days missed from work due to the need to take prescription narcotic medication; and whether the missed days of work were paid or unpaid.

D. the identities of all employees who were involuntarily terminated because they were determined to be medically disqualified because of the appropriate use of narcotic prescription medications, including name, address, telephone number, social security number, and last position held.

12. The Commission may review compliance with this Decree. As part of such review, the Commission may inspect Defendant's facilities, interview employees and examine and copy documents.

13. If anytime during the term of this Decree, the Commission believes that Defendant is in violation of the Decree, the Commission shall give notice of the alleged violation to Defendant. Defendant shall have twenty (20) days in which to investigate and respond to the allegations. Thereafter, the parties shall then have a period of ten (10) days or such additional period as may be agreed upon by them, in which to engage in negotiation and conciliation regarding such allegation before the Commission brings the alleged violation to this Court's attention for review pursuant to paragraph 17 below.

14. The term of this Decree shall be for two (2) years from its entry by the Court.

15. All reports or other documents sent to the Commission by Defendant pursuant to

7

this Decree shall be sent: (1) if by email to — EEOC-CTDO-decree-monitoring@eeoc.gov (preferred method); or (2) if by mail to — Lynette A. Barnes, Regional Attorney, Equal Employment Opportunity Commission, 129 W. Trade Street, Suite 400, Charlotte N.C., 28202.

16.     Each party shall bear its own costs and attorney's fees.

17.     This Court shall retain jurisdiction of this cause for purposes of monitoring compliance with this Decree and entry of such further orders as may be necessary or appropriate.

_____10/2/12_____
Date

_____
Judge, U.S. District Court
Eastern District of North Carolina

8

The parties jointly request that the Court approve and enter the Consent Decree:

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION, Plaintiff

P. DAVID LOPEZ
General Counsel

JAMES L. LEE
Deputy General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel

/s/ Lynette A. Barnes
LYNETTE A. BARNES
Regional Attorney

/s/ Tina Burnside
TINA BURNSIDE
Supervisory Trial Attorney

129 West Trade Street, Suite 400
Charlotte, N.C. 28202

/s/ Zoë G. Mahood
ZOE G. MAHOOD
Senior Trial Attorney
1309 Annapolis Drive
Raleigh NC 27608
Tel: (919) 856-4080
Facsimile: (919) 856-4156
zoe.mahood@eeoc.gov

New Hanover Regional Medical Center, Defendant

/s/ James B. Spears, Jr.
JAMES B. SPEARS, JR.
KELLY S. HUGHES

OGLETREE, DEADKINS, NASH,
SMOAK & STEWART, P.C.
201 South College Street, Suite 2300
Charlotte, NC 28244
jim.spears@ogletreedeakins.com
kelly.hughes@ogletreedeakins.com

10

# EXHIBIT A



New Hanover Regional
Medical Center

## Policy and Procedure

| Title: | **Post Employment Offer Medical Assessment** | | |
|---|---|---|---|
| Origination Date: | February 1996 | Manual: | Human Resources |
| Review Date(s): | Aug. 2002, Jan. 2003, Dec. 2005 | Section: | |
| Revision Date(s): | 8/98, 1/02, 8/02, 1/03 | Policy No.: | 48.0 |
| Effective Date: | 1/02, 8/02, 1/03 | Contact Dept.: | Human Resources |

Approval(s):

Jack Barto, President & Chief Executive Officer      Keith A. Strawn, Vice President, Human Resources

## I. POLICY

New Hanover Regional Medical Center requires that newly hired or rehired employees successfully complete a pre-employment physical assessment, to include a urine drug test and alcohol breathalyzer test, to ensure they are physically able to perform essential functions of their job and to meet all JCAHO and CDC requirements for health care/hospital workers.

## II. PROCEDURE

1. Once a job candidate is offered contingent employment and the offer is accepted, the Employment Department will schedule the prospective employee for the Employee Health Assessment.

2. Employment Department will inform the employee of the date and time the Employee Health Assessment is scheduled. The employee will also be asked to provide a copy of his/her immunization record and not to eat nor drink any food or beverage, except water, at least 2 hours prior to the scheduled appointment time. Prospective employees who do not keep their scheduled appointment may have the job offer withdrawn.

3. When the prospective employee arrives for the Employee Health Assessment in Employee Health Services the following procedures/tests will be performed:
   - Nursing assessment
   - Health history review
   - Urine Drug Test/Breath Alcohol Test
   - Immunization review
   - Update any immunizations as needed
   - Offer Hepatitis B series, if indicated. To be offered within the first 10 days of employment date or before.
   - PPD skin test or TB screening. A two-step PPD will be performed on the new employee that has no PPD in the past 12 months. The second PPD will be given within 1-3 weeks after the initial PPD given in Employee Health.

HR_48.0 Post Employment Offer
Medical Assessment

Page 1 of 2

EEOC v. New Hanover Reg. Med. Ctr.
NHRMC - 0020

- Chest X-ray (CXR) as indicated if a history of a positive PPD by the Employee Health physician's order.
- Lab work as necessary
- Further evaluation by an Employee Health physician may be required if more information is needed on items asked in the health history review, if a fitness for duty issue, or if a physical is part of the job requirement (i.e. Special Police Officers).
- Audiograms and hearing evaluations for workers exposed to frequent loud noise.
- Sight screening for drivers.
- Any other test/procedure that may be required to fulfill job requirements.

4.  All new employees must successfully pass all portions of the Employee Health Assessment including a urine drug test and alcohol breathalyzer test before attending orientation or beginning work.

5.  If any employee does not pass any portion of the Employee Health Assessment or is unable to perform the essential job duties in their new position without reasonable accommodation, he/she will be discharged or have the offer of employment withdrawn. Employee Health will notify the department Manager that the employee did not pass the Employee Health Assessment and will not give specific reasons due to the confidentiality of the medical examination.

6.  Any falsification or misrepresentation of a health history by the employee will be sufficient grounds for discharge.

7.  The results of an employee's health screening will be treated as confidential information and will become part of each employee's health record which is maintained in Employee Health Services.

8.  Newly hired employees or employees transferring into specified departments as designated by the Vice President, Human Resources will, because of the nature of their work, be required to complete a psychological evaluation by an accredited testing service.

END

EEOC v. New Hanover Reg. Med. Ctr.
NHRMC - 0021

# EXHIBIT B



## Policy and Procedure

| Title: | Medical Examinations | | |
|---|---|---|---|
| Origination Date: | February 1984 | Manual: | Human Resources |
| Review Date(s): | August 2002, Dec. 2005 | Section: | |
| Revision Date(s): | April 1999, January 2002 | Policy No.: | 37.0 |
| Effective Date: | January 2002 | Contact Dept.: | Human Resources |
| | | Approval(s): | |
| Jack Barto, President & Chief Executive Officer | | Keith Strawn, Vice President, Human Resources | |

## I. POLICY

New Hanover Regional Medical Center requires all employees are to have a post offer pre-employment health assessment, department specific testing (audiogram, vision, etc...) and annual immunization update to include PPD, (TB Skin Test) or TB screening to maintain their employment. In addition, all employees are encouraged, but not required, to participate in the Medical Center's annual health screening and free annual flu immunization program.

## II. PROCEDURE

1. All new hired or rehired employees must successfully complete a post offer pre-employment examination. Failure to disclose pertinent health information, as it relates to the job, or falsification of information may result in withdrawal of the job offer.

2. Department specific testing (e.g., audiogram, respirator fit testing, vision) will be completed annually or as necessary to comply with Medical Center, federal and state requirements.

3. PPD (TB Skin Test) or TB Screening annually for all employees. Bi-annual PPD (TB Skin Test) or TB Screening are required for the following departments:

   A. 8 North Medicine
   B. Coastal Family Medicine
   C. Emergency Department
   D. EMS
   E. Endoscopy
   F. Facilities Services (except Administrative)
   G. Laboratory (Cytology, Histology, Microbiology, Pathology)
   H. Medical/Surgical Clinic
   I. Radiology
   J. Respiratory Care

4. Employees should complete immunization update as necessary. Specific immunizations are required to maintain employment at New Hanover Regional Medical Center. Refer to the Immunization Requirements and Hepatitis B Immunization Program policy.

HR_37.0 Medical Examinations    Page 1 of 2

EEOC v. New Hanover Reg. Med. Ctr.
NHRMC - 0018

5. Failure to complete the required examinations/immunizations will result in the employee being removed from the work schedule and placed on an unpaid leave of absence without the use of PDOs until requirements are met.

6. Failure to disclose pertinent health information, as it relates to the job, or falsification of information may result in disciplinary action, up to and including discharge.

**END**

EEOC v. New Hanover Reg. Med. Ctr.
NHRMC - 0019

# EXHIBIT C



## Policy and Procedure

| | | | |
|---|---|---|---|
| **Title:** | **Alcohol and Drug Abuse** | | |
| **Origination Date:** | December 1989 | **Manual:** | Human Resources |
| **Review Date(s):** | August 2002, June 2003 | **Section:** | |
| **Revision Date(s):** | 4/99, 8/02, 6/03 | **Policy No.:** | 1.0 |
| **Effective Date:** | Aug 2002, Sept. 28, 2003 | **Contact Dept.:** | Human Resources |

Approval(s):

Richard L. Myers, Interim President & Chief Executive Officer

Barbara K. Sturniolo, Interim Vice President, Human Resources

*This policy is effective September 28, 2003 and supercedes and replaces all other Alcohol and Drug Abuse policies. Random drug testing is effective January 2, 2004.

## I. POLICY

New Hanover Regional Medical Center will strive to provide a safe, drug and alcohol free environment for its employees and customers and perform testing to ensure compliance. The Medical Center will provide a confidential Employee Assistance Program (EAP) for employees with substance abuse problems.

### Definitions:

*Breath Alcohol Technician:* An individual trained to proficiency in the operation of the evidential breath-testing device.

*Breath specimen:* An appropriate breath specimen is when an employee blows forcefully into the mouthpiece of an appropriate breath alcohol testing device for at least six (6) seconds or until sufficient volume is obtained to obtain a test result.

*Controlled substance abuse:* Prescribed drugs not being used for prescribed purposes or in a prescribed manner.

*Controlled substance:* Those named as such in the United States Controlled Substance Code.

*Evidential breath testing device:* A machine more commonly referred to as a breathalyzer. The device analyzes a sample of an employee's breath to determine the alcohol body content. Illegal drugs: Drugs and controlled substances, the possession or use of which is unlawful pursuant to federal, state, and local laws and regulations. Drugs and controlled substances that are not legally obtainable, or that are legally obtainable but have not been legally obtained are considered to be illegal drugs.

*Motor equipment:* A motorized device not classified as a motor vehicle but under the control of an operator.

EEOC v. New Hanover Reg. Med. Ctr.
NHRMC - 0001

*Motor vehicle*: A self-propelled device designed or being used to move persons or property, its occupants, loads, and any other object being towed or pushed from one place to another on land surfaces, except where the device is engaged in an activity that precludes it being classified as a motor vehicle.

*Non-preventable accident*: An accident where the employee operated the motor vehicle/equipment in such a manner that the driver/operator committed no errors, and so controlled the vehicle/equipment in a manner to make due allowance for condition of roads, weather, traffic, and the mistakes of other drivers/personnel.

*Non-preventable injury*: An injury that occurs when an employee is working in a safe manner obeying all local, state, federal and Medical Center rules, regulations, practices and/or laws and in no way contributed to an act or situation that resulted in an injury.

*Preventable accident*: One in which the employee failed to do everything he/she reasonably could to avoid the accident.

*Preventable injury*: An injury that occurs as a result of an employee's failure to complete his/her work responsibilities in a safe manner by complying with all local, state federal and Medical Center rules, regulations, practices and/or laws that govern a safe workplace.

*Reasonable suspicion*: Opinion based on objective facts and circumstances that are consistent with the short-term effects of substance abuse or alcohol misuse.

*Substance Abuse Professional*: A licensed physician (medical doctor or doctor of Osteopathy), a licensed or certified psychologist, or a social worker, employee assistance professional, or an addiction counselor certified by the National Association of Alcohol and Drug Abuse Counselors Certification Commission.

*Vehicle/equipment accident*: An unintended event resulting in damage, personal injury, or death due to the operation of the vehicle/equipment.

### Prohibited Conduct

Employees who use, possess, sell, purchase or manufacture illegal drugs, or controlled substances (defined as any drug or drug-like substance whose sale, use, purchase, or possession is unlawful without a prescription) or alcohol while on the job or on the Medical Center's property will be subject to disciplinary action, up to and including discharge.

### Prohibited Substances

Prohibited substances addressed by this policy include the following: any illegal drug or any substance identified in Schedules I through V of Section 202 of the Controlled Substance Act (21 U.S.C. 812), and as further defined by 21 CFR 1300.11 through 1300.15. This includes, but is not limited to: marijuana, amphetamines, opiates, phencyclidine (PCP), and cocaine, as well as any drug not approved for medical use by the U.S. Drug Enforcement Administration or the U.S. Food and Drug Administration. Illegal use includes use of any illegal drug, misuse of legally prescribed drugs, and use of illegally obtained prescription drugs.

EEOC v. New Hanover Reg. Med. Ctr.
NHRMC - 0002

Case 7:09-cv-00085-D   Document 144   Filed 10/03/12   Page 16 of 25

### Legal Drugs

The appropriate use of legally prescribed drugs and non-prescription medications is not prohibited. Medical Center employees on any medication that may cause impairment (mental functioning, motor skills, or judgment may be adversely affected) must be cleared by Employee Health Services to work. Employees may be required to provide a list of medications taken or documentation from their personal physician regarding prescribed medications. Failure to comply may result in disciplinary action, up to and including discharge.

A legally prescribed drug means that the individual has a prescription or other written approval from a physician for the use of the drug in the course of medical treatment. It will be contained or transported in its original prescription container and include the patient's name, the name of the substance, quantity/amount to be taken, and the period of authorization. The misuse or abuse of legal drugs while performing job functions is prohibited.

### Alcohol

The use of beverages containing alcohol or substances including any medication, mouthwash, food, candy, or any other substance such that alcohol is present in the body while performing job functions is prohibited. The Medical Center uses the Department of Transportation guidelines for alcohol restrictions, which is no use within eight (8) hours of reporting to duty.

### Impairment

An employee suspected of being impaired (intoxicated, under the influence of a prohibited substance or not fit for duty) shall be suspended from his/her job duties pending the results of an investigation. Employees found to be under the influence of prohibited substances or who fail to pass a drug and/or alcohol test shall be removed from duty and subject to disciplinary action, up to and including discharge. A drug or alcohol test is considered positive if the individual is found to have a quantifiable presence of a prohibited substance in the body above the minimum thresholds defined in 49 CFR Part 40, as amended.

## II.  PROCEDURE

A.   There are four (4) instances in which substance abuse testing will be conducted on newly hired and regular employees of New Hanover Regional Medical Center. All tests will be conducted by labs approved by the Substance Abuse and Mental Health Services Administration (SAMHSA) of the Department of Health and Human Services (DHHS) to be consistent in following DOT guidelines:

1. Post employment offer testing.
2. Random testing.
3. Post accident testing.
4. Reasonable cause testing.

EEOC v. New Hanover Reg. Med. Ctr.
NHRMC - 0003

B.    Drug testing will be conducted as the first phase of Fitness for Duty screening for the new hire employee. The new hire employee will be informed of the mandatory testing and must sign a "Consent for Testing" form for the initial drug test and for random drug/alcohol testing. The new hire employee will be informed that random drug/alcohol testing is conducted during the course of employment in the Medical Center. Post accident and reasonable cause testing may also be performed as outlined below. An additional "Consent for Testing" form may be required, as necessary. The Medical Center's Employee Health Services Nurse will receive test results in confidence and relay the results to those with a need to know.

C.    POST OFFER EMPLOYMENT TESTING

1.    All offers of employment are contingent upon successful passing of a health assessment, which includes a negative urine drug test prior to the first day of work.

2.    The applicant must provide a picture identification upon the day of collection. The applicant must provide a urine specimen immediately and sign a form verifying that the specimen obtained has not been altered. Specimen collection will be obtained by using the standards and practices of the approved lab, as defined in N.C. General Statute, Section 95-232, that contracts with New Hanover Regional

3.    Medical Center to collect and/or test specimens. If the applicant is less than 18 years old, he/she must have written permission for treatment and testing from their parent or legal guardian, unless emancipated. If a new hire employee refuses testing, the offer of employment is immediately revoked. Employee Health Services will immediately notify Human Resources.

D.    RANDOM TESTING

1.    Random drug/alcohol testing will be performed weekly on 10 randomly selected Medical Center staff. Employees will be selected from a computer generated random employee list.

2.    Employee Health Services will notify the Department Director (Manager) or designee of the chosen employee(s)*. Based upon the employee's schedule, the Director (Manager)/designee will notify the employee to report to Employee Health Services within two hours of notification, but no later than Employee Health Services business closing. If the employee is not scheduled to work within the four (4) days immediately following the selection date, the Director/Manager will notify Employee Health Services. The employee would not be tested upon returning to work after the four days.

*Note: If the Director (Manager) is not available, the respective (Director) Vice President will be notified. If these individuals are not available, Employee Health Services will notify the employees directly.

3.    Employee Health Services will notify Department Directors to be tested and the Vice President of Human Resources will notify the Vice Presidents and/or President of the Medical Center to be tested.

EEOC v. New Hanover Reg. Med. Ctr.
NHRMC - 0004

    4. If the employee refuses testing, Employee Health Services will consult the Vice President of Human Resources or designee immediately and the employee may be subject to disciplinary action, up to and including discharge.

F.    POST ACCIDENT TESTING

    1. Employees involved in **job related accidents/injuries** may be subject to mandatory testing for the presence of illegal drugs and/or alcohol. Mandatory testing of the employee will be required if the accident resulted in a fatality.

    2. Refusal to submit to testing will subject the employee to disciplinary action, up to and including discharge.

    3. Drug testing should be administered as soon a possible, but no more than 24 hours after an accident. An alcohol test should be administered within two (2) hours, but no longer than eight (8) hours after an accident. These requirements in no way should interfere with any necessary medical attention or law enforcement investigation. If a delay does occur, this must be documented in writing by the employee's Director and forwarded to Employee Health Services.

G.    REASONABLE SUSPICION TESTING

Reasonable suspicion is a belief that an employee is impaired and is under the influence of alcohol or drugs that can be drawn from specified and particular facts, documented and reasonably inferred from any of the following:

    1. Observable phenomena, such as the direct observation of drug and alcohol use, drug possession or the physical symptoms of being under the influence of drugs or alcohol such as, slurred speech, unsteady gait and/or odor of an alcoholic beverage.
    2. A pattern of consistent abnormal conduct or erratic behavior.
    3. Arrest or conviction for a drug-related offense.
    4. Accident, unusually careless acts, incidents where safety precautions were violated.
    5. During the investigation of situations involving the diversion of drugs and/or other controlled substance.

H.    When there is reasonable suspicion of an employee being impaired while on    duty, the following steps must be taken:

    1. The Director/Manager will immediately relieve the employee of his/her duties and assist the employee from the work area to a confidential location. The employee will be informed as to the reason. If needed, assistance may be requested from Special Police Services. Refusal by an employee to follow the instructions of his/her Director/Manager will be viewed as insubordination and may result in disciplinary action up to and including discharge.

    2. The Vice President of Human Resources, or designee, will be consulted prior to the request made of the employee for alcohol and/or drug testing. The Medical Center may take disciplinary action without testing if the circumstances from the internal investigation clearly indicate impairment or a situation where the possession, sale, use or distribution of alcohol or drugs occurs.

EEOC v. New Hanover Reg. Med. Ctr.
NHRMC - 0005

3. When the employee and designated administrative staff have been informed and permission has been obtained to proceed, the following steps must occur:

a) Directors/Managers involved must handle testing procedures discreetly with limited involvement of other employees or departments.

b) The Employee(s) approved for testing will be escorted to Employee Health Services (during business hours) for collection of necessary specimens for testing. In the event Employee Health Services is closed, the Coordinator, Administrative Supervision (Nursing Supervisor) will ensure confidential testing is completed using protocols provided by Employee Health Services. A "Consent for Testing" form will be signed by the suspected employee unless previously completed.

M.     Guidelines for Test Collection

Guidelines for test collection are maintained in Employee Health Services. When Employee Health Services is closed, the Coordinator, Administrative Supervision (Nursing Supervisor) will be responsible for test collection, if necessary. The guidelines for test collection when Employee Health Services is closed will be maintained in the Coordinator office.

N.     Positive Test Results

The applicant/employee will be provided written notice of their rights and responsibilities regarding drug testing as covered by the Controlled Substances Examination Regulation Act of North Carolina. Employee Health will provide to the applicant/employee, in writing, a positive test result of a controlled substance examination. Also the applicant/employee will be given, in writing, rights and responsibilities regarding retesting of a positive sample.

Positive test results will be viewed as evidence that the employee has used alcohol/drugs in violation of this policy. The following steps will occur:

1. If a drug test for a new hire employee is confirmed positive for prohibited substances as described in Section I, D, the applicant will be informed of the positive test results and the employment offer is immediately revoked. The applicant will be informed that reapplication for employment at the Medical Center will be considered after a six (6) month time period for non-professional positions and one (1) year for professional positions. Due to confidentiality, Employee Health Services will notify Employment that the applicant has not passed the Employee Health Assessment. Employment will forward this information to the Department Director.

An offer of employment may be granted if a one time use of controlled drug not legally prescribed for the applicant has been determined prior to the urine specimen being obtained. The applicant will be counseled on the ramifications of using another's prescribed medication. If offer of employment is granted, the new hire employee must consent to unannounced or without prior notice drug testing for a minimum of two (2) years in addition to the normal random drug testing. If the drug test is positive and no drugs were declared the offer of employment may be revoked.

EEOC v. New Hanover Reg. Med. Ctr.
NHRMC - 0006

2.  If positive (drug/alcohol) test results occur due to other than post offer employment testing, the employee and Director (Manager) will be notified of the test results. Disciplinary action, up to and including discharge, rehabilitation and return to work options will be reviewed with the employee. The employee will be relieved from duty indefinitely and sent home. If a positive result is on a temporary/contract staff member, Human Resources will notify the contracting agency immediately of the incident. The contract employee will be placed off work immediately.

    If the involved employee is licensed other than nursing (Physical Therapist, Occupational Therapist, Physical or Occupational Therapy Assistant, Speech/Language Pathologist, etc.) the Director (Manager) must notify the appropriate licensing agency/governing body. The Chief Nurse Executive will also be notified if a positive test involves licensed nursing staff. The Chief Nurse Executive and/or Director (Manager) must contact the North Carolina Board of Nursing for further recommendations/actions.

    Notes:
    If the applicant/employee is less than 18 years old, unless emancipated, the parent/legal guardian will also be informed of the positive test results.

    An alcohol concentration of less than 0.02 is considered a negative test result. If the results are 0.02 or greater, repeat the breath sample as a confirmation test. Confirmation test results indicating an alcohol level of 0.02 or greater will be    considered a positive test result.

O.   Rehabilitation and Return to Work

1.  In an effort to encourage rehabilitation of employees, self-referral to the Employee Assistance Program (EAP) and treatment is urged and supported by the Medical Center. Employees participating in self-referral activities will retain their eligibility to access leave and benefits in accordance with policy. Payment for the treatment programs will be the responsibility of the employee. An employee on leave may return to the same or similar job, if available, upon completion of the leave in accordance with the Leave of Absence policy and applicable law.

2.  If the EAP counselor determines that a dependency or impairment does not exist, the employee may return to work subject to the Medical Center Fitness for Duty and disciplinary policies.

3.  Upon return to work, during, and after treatment, the Medical Center will have full authority to reassign, monitor, and assess performance to assure that the employee's return to work does not pose a risk to patients, fellow employees, physicians and guests. RN's and LPN's will also be monitored under the North Carolina Board of Nursing Alternative Program, if participating.

4.  Employee Health Services has the responsibility for authorizing the return to work under the provisions of the Fitness for Duty policy. This includes the use of drug/alcohol testing unannounced or without prior notice of the employee with a previous violation of this policy for a minimum of two (2) years.

EEOC v. New Hanover Reg. Med. Ctr.
NHRMC - 0007

P.   Searches

When the Medical Center has a reasonable suspicion that an employee is involved with the use, possession, sale or distribution of alcohol/drugs, the employee may be requested to allow Special Police Services to inspect the contents of packages, lockers, or other belongings in the presence of the employee. Failure to cooperate, or refusal to allow inspection, may result in disciplinary action up to and including discharge. All searches will be conducted consistent with North Carolina State regulations. Special Police, during its investigation, will contact the appropriate federal, state, and/or local law enforcement authority for further assistance as necessary.

Q.   General Statements

1.   Employees who have completed their probationary period and voluntarily enter a rehabilitation program for drugs and/or alcohol before an incident at work, which establishes drug or alcohol-related impairment, or reasonable suspicion of impairment, will not jeopardize their continued employment. During or subsequent to a rehabilitation program, the employee must maintain an acceptable performance level or will be subject to the Medical Center's normal disciplinary process. Employment is only protected during the initial incident and a repeat incident may result in immediate termination. Employees voluntarily participating in a drug/alcohol rehabilitation program shall maintain access to their selected benefit plan(s). Time off will be in accordance with the Medical Center's Leave of Absence policy.

2.   Employees who take over the counter medications and/or are under a physician's care utilizing a drug or controlled substance, which adversely affects their ability to perform their job duties, will notify their Director (Manager) and come to Employee Health Services for assessment. The Employee Health physician or designee will assess each employee on a case-by-case basis. Failure to notify their Director and Employee Health Services may result in disciplinary action up to and including discharge.

3.   All records and information of personnel actions taken on applicants and employees shall be maintained in accordance with the acceptable chain-of-custody, and applicable laws, regulations and the Medical Center's policies.

4.   An employee refusing to comply with a request for testing will be removed from duty subject to disciplinary action up to and including discharge. Refusal includes the inability to provide a sufficient urine specimen or breath sample (blood sample may also be taken with consent) without a valid medical explanation, as well as a verbal declaration, obstructive behavior, or physical absence resulting in the inability to conduct testing.

5.   An employee suspected of providing false information or falsifying test results through tampering, contamination, adulteration, or substitution will undergo a second collection under observation. Verification that an employee provided false information or falsified test results through tampering, contamination, adulteration, or substitution shall result in immediate termination.

EEOC v. New Hanover Reg. Med. Ctr.
NHRMC - 0008

6. The applicant/employee will be provided written notice of their rights and responsibilities regarding drug testing as covered by the Controlled Substances Examination Regulation Act of North Carolina. Employee Health will provide to the applicant/employee, in writing, a positive test result of a controlled substance examination. Also the applicant/employee will be given, in writing, rights and responsibilities regarding retesting of a positive sample.

7. This policy explicitly prohibits providing alcohol during any activity or event sponsored or organized by the Medical Center. This provision includes, but is not limited to, receptions, parties, picnics, dinners, social gatherings, sporting events, etc. that are organized by the Medical Center.

8. To limit accident and liability exposure and protect the safety of the employee and others, the impaired employee will not be allowed to leave the premises without escort or without arrangements for safe transit.

EEOC v. New Hanover Reg. Med. Ctr.
NHRMC - 0009

NEW HANOVER REGIONAL MEDICAL CENTER

RANDOM TESTING GUIDELINES

The following guidelines are designed to assist Directors/Managers when implementing the "random testing" component of the Medical Center's Substance Abuse Policy.

1.  Employee Health Services Initial Responsibility: Employees will be chosen for testing by a computer generated random selection process. A "Notification for Testing" form will be generated for each employee to be tested. Once form is completed the Director (Manager) will be notified, in person, by an Employee Health Services representative.

2.  Director (Manager) Responsibility: The Director (Manager) will be asked to sign for the "Notification for Testing" form for any selected employee under their supervision. (Should the Director not be available the respective Vice President will be asked to complete this process.) The date and time will be recorded for legal purposes. At this time, the Employee Health representative will remove the last page (pink copy). Managers will then contact the affected employee to report to Employee Health Services within two hours of notification, but no later than Employee Health Services business closing.

3.  Employee's Responsibility: Employees will sign for the "Notification for Testing" form in the presence of the Director (Manager). Directors (Managers), at this time, remove the yellow copy. This copy is maintained in the department files in case any discrepancies occur in the process. Upon reporting to Employee Health Services, the employee must present the original (white copy) "Notification for Testing" form and have a picture identification card. The Medical Center's ID badge or a valid driver's license is acceptable.

4.  Employee Health Services Final Responsibility: Once the employee has reported, the Employee Health Services staff member will record the date and time the employee reports for testing. Test results, once received, will be reported to Human Resources and the Director if positive.

END

EEOC v. New Hanover Reg. Med. Ctr.
NHRMC - 0010

# EXHIBIT D

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
## SOUTHERN DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT<br>OPPORTUNITY COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>NEW HANOVER REGIONAL<br>MEDICAL CENTER,<br><br>Defendant. | )<br>)<br>)<br>)<br>)   **CIVIL ACTION NO. 7:09-CV-00085**<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

1.    This Notice is posted pursuant to a settlement between the U.S. Equal Employment Opportunity Commission and New Hanover Regional Medical Center involving allegations of discrimination by excluding applicants and employees from employment if they were taking a legally prescribed narcotic medication. New Hanover Regional Medical Center has denied any past or current violation of the Americans with Disabilities Act. As part of the settlement, New Hanover Regional Medical Center has agreed to take actions set out in the Consent Decree resolving this matter.

2.    Federal law requires that employers not discriminate against any employee or applicant for employment because of the individual's race, color, religion, sex, national origin, age (40 or older) or disability. The Americans with Disabilities Act specifically prohibits disability discrimination.

3.    New Hanover Regional Medical Center will not take any actions against employees because they have exercised their rights, reported an alleged violation under the law or given testimony, assistance or participation in any investigation, proceeding or hearing conducted by the U. S. Equal Employment Opportunity Commission.

An employee may contact their local U. S. Equal Employment Opportunity Commission field office for the purpose of filing a charge of employment discrimination. To locate the nearest field office, contact:

Equal Employment Opportunity Commission
1801 L Street, N.W.
Washington, DC 20507
TEL: 1-800-669-4000
TTY: 1-800-669-6820

This Notice will remain posted for at least two (2) years by agreement with the U.S. Equal Employment Opportunity Commission.

DO NOT REMOVE THIS NOTICE UNTIL: _____, 2014.